UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC., dba SAN DIEGO MARRIOTT HOTEL & MARINA,<br><br>Plaintiff,<br><br>v.<br><br>M/Y UNDER THE RADAR, a 2001 37.8-Foot Sea Ray Sundancer Motor Yacht, U.S. Coast Guard Official No. 1120637, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENCES, *in rem*,<br><br>Defendant. | Case No.: 24-cv-1871-AJB-MSB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID**<br><br>**(Doc. No. 16)** |

Presently before the Court is Plaintiff Marriott International, Inc.'s ("Plaintiff") Motion for Interlocutory Vessel Sale of M/Y UNDER THE RADAR, a 2001 37.8-Foot Sea Ray Motor Yacht, U.S. Coast Guard Official No. 1120637 and all of her engines, tackle, accessories, equipment, furnishings, and appurtenances ("Defendant Vessel") at public auction and permitting Plaintiff to credit bid a sum equal to its maritime lien claims. (Doc. No. 16.) No appearance has been made in this action on behalf of the Defendant

Vessel. And no opposition has been filed to the instant motion. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion.

## I.  PROCEDURAL BACKGROUND

On October 15, 2024, Plaintiff commenced this action in admiralty against Defendant Vessel by filing a Verified Complaint for vessel arrest, interlocutory sale, and for money damages for breach of maritime contract, trespass, and quantum meruit. (Doc. No. 1, Compl.) On November 25, 2024, the Court issued an order authorizing the arrest of the Defendant Vessel and appointing Plaintiff as Substitute Custodian thereof. (Doc. No. 7.) On February 20, 2025, an entry of clerk default was entered against Defendant Vessel. (Doc. No. 14.) On April 15, 2025, Plaintiff filed the instant motion for interlocutory vessel sale and authorization to credit bid. (Doc. No. 16.) No opposition has been filed.

## II.  FACTUAL BACKGROUND

Plaintiff owns and operates Marriott Marquis San Diego Marina. (Doc. No. 1 ¶ 2.) On March 12, 2009, Plaintiff entered into a Maritime Contract for Private Wharfage ("Wharfage Contract") with Michael Hohn, who is identified therein as the owner of Defendant Vessel. (Doc. No. 1-2, Exh. A to the Compl.) Plaintiff began providing wharfage services for the benefit of Defendant Vessel on April 1, 2009. (Doc. No. 1 ¶ 6.)

Plaintiff is informed and believes that Michael Hohn passed away in February 2023. (*Id.* ¶ 8.) Based on United States Coast Guard records showing that he jointly owned the Defendant Vessel with Gail Hohn, she became the sole owner of the vessel upon Michael Hohn's passing. (*Id.*)

In June 2023, Gail Hohn filed for bankruptcy protection, and in September 2023, the bankruptcy court discharged her debts, including that to Plaintiff in the amount of $1,986.00 reflected in her filings. (*Id.* ¶ 9.)

On October 10, 2023, Plaintiff sent Gail Hohn a letter notifying her that Plaintiff has elected to terminate the Wharfage Contract on November 13, 2023. (*Id.* ¶11.) The letter also advised that Plaintiff would waive the fees that were then due pursuant to the Wharfage

Contract in the amount of $7,218.77, if the Defendant Vessel was removed by the termination date. (*Id.*) Neither Gail Hohn nor anyone else removed the Defendant Vessel by the termination date or thereafter. (*Id.*)

On March 8, 2024, Plaintiff inquired of PNC Bank whether it would retrieve the Defendant Vessel or release their interest therein, as U.S. Coast Guard records showed that its predecessor (National City Bank) recorded a Preferred Ship Mortgage encumbering the Defendant Vessel, and bankruptcy records showed that Gail Hohn owned PNC bank a "mortgage." (*Id.* ¶¶ 12–13.) PNC Bank responded that it would not pick up the Defendant Vessel and that Plaintiff could apply for a mechanic's lien. (*Id.* ¶ 13.)

Despite the termination of the Wharfage Contract, Defendant Vessel was not removed from Plaintiff's marina and remains there without authority. (*Id.* ¶ 14.) Because of the failure to pay fees due pursuant to the Wharfage Contract, Plaintiff alleges damages calculated through October 31, 2024, in a sum not less than $20,894.98. (*Id.* at ¶ 18.)

### III. DISCUSSION

Through the instant motion, Plaintiff requests the Court: (1) find that Plaintiff has a preferred maritime lien; (2) order the interlocutory sale of Defendant Vessel at public auction; and (3) authorize Plaintiff to credit bid at the auction a sum equal to its maritime lien claims. (Doc. No. 16-1.)

### A. Preferred Maritime Lien

#### 1. Maritime Lien

To begin, Plaintiff asserts that, under 46 U.S.C. § 31342(a), it has a statutorily conferred maritime lien on the Defendant Vessel because it provides "necessaries" to the Defendant Vessel. The statute provides, in pertinent part:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action in rem to enforce the lien; and

           (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342(a). What constitutes "necessaries" within the meaning of the statute "has been expanded to encompass any item which is '"reasonably needed for the venture in which the ship is engaged."'" *Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 699 (9th Cir. 1987).

      Here, Plaintiff has provided wharfage (storage) services to the Defendant Vessel at its marina. Storage of the Defendant Vessel is reasonably needed for its operations. Indeed, Michael Hohn affirmed in the Wharfage Contract that he enters into the agreement for private wharfage for the benefit of the Defendant Vessel. (Doc. No. 1-2 at 4.) Thus, the Court agrees with Plaintiff that it has provided necessaries to the Defendant Vessel giving rise to a maritime lien against the Defendant Vessel under the statute. *See, e.g.*, *Ex parte Easton*, 95 U.S. 68, 73 (1877) ("Wharf accommodation is a necessity of navigation, and such accommodations are indispensable for ships and vessels and water-craft of every name and description, whether employed in carrying freight or passengers, or engaged in the fisheries").

        **2.    Preferred Maritime Lien**

      Plaintiff further contends that, under 46 U.S.C. § 31301, it has a statutorily conferred preferred maritime lien against the Defendant Vessel "for damage arising out of maritime tort"—namely, trespass. 46 U.S.C. § 31301(5)(B). "There is no distinct claim for maritime trespass under the admiralty substantive body of law. Accordingly, the Court looks to the general common law to ascertain the requirements of a maritime trespass claim." *Stuart Cay Marina v. M/V SPECIAL DELIVERY*, 510 F. Supp. 2d 1063, 1074 (S.D. Fla. 2007). Under the Restatement (Second) of Torts, one is liable for trespass if he intentionally: "(a) enters land in the possession of another, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement 2nd of Torts § 158.

In support of its trespass claim, Plaintiff alleges that despite having terminated the Wharfage Contract and given Gail Hohn notice of the termination and an opportunity to remove the Defendant Vessel, it remains there without authority, and hence, in the capacity of a trespasser. (Doc. No. 1 ¶¶ 20–21.) Plaintiff states that because of the Defendant Vessel's trespass, Plaintiff has been damaged in an amount not less than $20,894.98 (calculated through the month in which the action was filed).

Based on the foregoing, the record supports a finding of trespass because the Defendant Vessel remains in Plaintiff's marina despite termination of their Wharfage Contract, and because the Defendant Vessel's apparent owner, Gail Hohn, has failed to retrieve the Defendant Vessel from the marina despite being afforded notice to do so. There being no evidence to the contrary, the Court finds Plaintiff has a preferred maritime lien under 46 U.S.C. § 31301(5)(B) for damages arising out of maritime trespass. *See, e.g.*, *Stuart Cay Marina*, 510 F. Supp. 2d at 1075 ("[W]hile [the vessel's] initial entry might be fairly exempt from classification as a trespass, their continued presence after such innocent entry might just as fairly bring a trespass claim into existence.").

**B.  Interlocutory Sale**

Next, Plaintiff moves the Court to order an interlocutory sale of the Defendant Vessel. "The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). Rule (E)(9)(a)[1] of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims governs interlocutory vessel sales and provides:

> On application of a party . . the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if: (A) the attached or

---

[1] In its motion, Plaintiff references the former Rule (E)(9)(b) of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. (Doc. No. 16-1 at 13.)

arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property.

Plaintiff need only establish one of the three provisions listed in Rule E(9)(a)(i) to merit an order for an interlocutory sale. *See Bank of Rio Vista v. VESSEL CAPTAIN PETE*, No. C 04-2736CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct. 14, 2004). The Court discusses each provision in turn.

### 1. Deterioration, Decay, or Injury

Plaintiff argues that the Defendant Vessel is subject to "deterioration, decay, or injury" under the first provision of Rule E(9)(a)(i) because it is sitting idle in salt water and will continue to deteriorate if it is not operated. (Doc. No. 16-1 at 15.) However, Plaintiff has not provided the Court with any evidence that the Defendant Vessel is particularly susceptible to deterioration, decay, or injury beyond the generalized assertion that unused vessels inevitably deteriorate over time. Absent specific evidence showing deterioration, decay, or injury, the Court does not find an interlocutory sale of the Defendant Vessel warranted under Rule E(9)(a)(i)(A). *See Vineyard Bank v. M/Y Elizabeth I*, No. 08CV2044 BTM (WMC), 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009) (stating that a general assertion of a vessel's deterioration without evidence of specific injury does not satisfy the "deterioration, decay, or injury" provision of Rule E(9)(a)(i)); *cf. Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981) (upholding district court's decision to grant interlocutory sale in part due to deterioration of the vessels when district court received expert testimony detailing the deterioration of the defendant vessels due to corrosion and rust, and thus requiring costly overhaul, because they sat idle).

### 2. Excessive or Disproportionate Expense

Plaintiff next asserts that the sale of the Defendant Vessel is justified under Rule E(9)(a)(i)(B) because the expense of maintenance while the vessel is in custody is excessive and disproportionate. (Doc. No. 16-1 at 17–20.) "Maintenance expenses of

several thousand dollars per month, particularly where Defendant has made no attempt to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Vineyard Bank*, 2009 WL 799304, at *2 (citation omitted).

In support of its maritime lien claims, Plaintiff submitted a declaration from a licensed yacht broker, Ray Jones. (Doc. No. 16-2.) Mr. Jones estimates that the Defendant Vessel has a fair market value of approximately $10,000.00. (*Id.* at 4.) As of June 2025, substitute custodian fees have totaled at least $20,000.00 and continue to grow. (Doc. No. 16-1 at 20.) And neither Gail Hohn nor PNC Bank (or anyone else) have answered Plaintiff's Verified Complaint or made any effort to secure the Defendant Vessel. Because the total expenses are more than the fair value of the Defendant Vessel and no one has attempted to secure its release, the Court finds that the expense of keeping the Defendant Vessel is disproportionate to its value. Accordingly, the Court finds that an interlocutory sale of the Defendant Vessel is justified under Rule E(9)(a)(i)(B). *See Vineyard Bank*, 2009 WL 799304, at *2.

### 3. Unreasonable Delay in Securing Release

Plaintiff also contends that because there has been no attempt in retrieving the Defendant Vessel, there has been an unreasonable delay in securing the release of the property, warranting a sale under Rule E(9)(a)(i)(C). Courts typically grant a motion for interlocutory sale only if the defendant has been afforded a reasonable amount of time to post a bond to secure the vessel. *See Bank of Rio Vista v. Vessel Captain Pete*, 2004 WL 2330704, at *2 (N.D. Cal. Oct.14, 2004). When a defendant has been afforded at least four months to secure the vessel but has not filed any response or made any attempt to obtain the vessel's release, courts may grant interlocutory sale based upon unreasonable delay. *Vineyard Bank*, 2009 WL 799304, at *2.

Here, neither Gail Hohn, PNC Bank, nor anyone else has answered Plaintiff's Verified Complaint or filed any response to this action or the instant motion. At this point, more than six months have passed since the Defendant Vessel's arrest on December 13,

2024. No one has attempted to secure its release. Given these circumstances, the Court finds that there has been unreasonable delay in securing the Defendant Vessel's release. Accordingly, ordering the interlocutory sale of the Defendant Vessel is justified under Rule E(9)(a)(i)(C). *See id.*

* * *

Considering the disproportionate cost of maintaining the Defendant Vessel and the unreasonable delay in securing its release, the Court finds an interlocutory sale warranted under Rule E(9)(a)(i) and **GRANTS** Plaintiff's motion for interlocutory sale of the Defendant Vessel.

### C. Authorization to Credit Bid

Finally, Plaintiff requests authorization to credit bid at the auction of the Defendant Vessel. (Doc. No. 16-1 at 21.) Under Local Rule E.1(e)(2):

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a property recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

Civ. L. Rule E.1(e)(2).

Plaintiff represents that, apart from itself, no party has asserted any maritime lien claim against the Defendant Vessel. (Doc. No. 16-1 at 21.) Because "it is the *only* maritime lien claimant," Plaintiff argues, its claim "is, by definition, senior to all other claims in this action." (*Id.*) In turn, Plaintiff requests the Court to authorize a credit bid at the auction up to the lien amount attested under oath in the Verified Complaint ($20,894.98) and which will be established by affidavit pursuant to Local Rule E.1(e)(2), plus its actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian and other *custodia legis* expenses, to be calculated through the date of the vessel sale at the rates provided by

this Court's Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. (*Id.*)

Provided that Plaintiff complies with Local Rule E.1(e)(2) by establishing the total amount of the secured indebtedness by affidavit filed and served on all other parties no later than seven days prior to the date of the sale, the Court **GRANTS** Plaintiff's request to credit bid at the auction of Defendant Vessel. *See California Yacht Marina--Chula Vista, LLC v. S/V OPILY*, No. 14-CV-01215-BAS BGS, 2015 WL 1197540, at *5 (S.D. Cal. Mar. 16, 2015).

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Interlocutory Vessel Sale and Authorization to Credit Bid. (Doc. No. 16.) Accordingly, **IT IS HEREBY ORDERED** that:

1. The United States Marshal be and hereby is directed and empowered to sell the Defendant Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale as required by Local Rule E.1(e)(1). Such public notice must specify the date, time and location for the sale of the Defendant Vessel;

2. Consistent with Local Rule E.1(e)(2), such public notice must specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays;

3. Any proceeds of said sale must be held by the United States Marshal or

deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court;

4. Plaintiff, being the only claimant in this action and having demonstrated the seniority of its lien, is authorized pursuant to Local Rule E.1(e)(2) to credit bid at the auction of the Defendant Vessel, without payment of cash, in the amount attested to in its Verified Complaint ($20,894.98, through October 31, 2024) plus actual and demonstrable costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. However, as Plaintiff's maritime necessaries lien interest in the Defendant Vessel does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes;

5. Should Plaintiff elect to credit bid, it must file and serve all parties with its Notice of Intent to Credit Bid and affidavit establishing the total amount of its secured indebtedness no later than seven days prior to the date of the sale of the Defendant Vessel, as required by Local Rule E.1(e)(2); and

6. Pursuant to Local Rule E.1(e)(2), if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection to the sale of the Defendant Vessel is filed, the sale will stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale will stand confirmed until the buyer has complied fully with the terms of the purchase.

**IT IS SO ORDERED**.

Dated: June 30, 2025

Hon. Anthony J. Battaglia
United States District Judge